THE LOYAL.

(Circuit Court of Appeals, Second Circuit. March 24, 1913.)

No. 179.

1. SALVAGE (§ 7*)—RIGHT TO COMPENSATION—NATURE OF SERVICE.

A tug, which on request went to the assistance of a lighter, which had sprung a leak, and by keeping her pumped out, until she was towed to a place of safety, saved her cargo, *held* entitled to compensation for a salvage service.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 13, 16, 26; Dec. Dig. § 7.*]

2. SALVAGE (§ 23*)—SAVING OF CARGO—LIABILITY OF VESSEL—UNSEAWORTHINESS.

A lighter, which, after loading her cargo, and while remaining overnight at the pier where she loaded, sprung a leak, *held* unseaworthy, and her owner, who was under contract with the owner of the cargo to render the lighterage service, liable for salvage expense incurred to save the cargo.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 53, 54; Dec. Dig. § 23.*]

3. SHIPPING (§ 207*)—RIGHT TO LIMITATION OF LIABILITY—PERSONAL CONTRACTS OF SHIPOWNER.

A shipowner is not entitled to a limitation of liability for a breach of his personal contract; and where a lighterage company contracted to do all the lighterage for an importer for a fixed term, which contract carried by implication a warranty that the lighters furnished should be seaworthy, but because of the unseaworthiness of one salvage services were incurred to save the cargo, the company was not entitled to limit its liability for such expense.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 555, 643, 644; Dec. Dig. § 207.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York; George C. Holt, Judge.

Suit in admiralty by O'Brien Bros., owners of the tug O'Brien, against the lighter Loyal and her cargo, Apollinaris Company, Limited, cargo claimant, and J. W. Jarvis Company, impleaded. Decree against the Jarvis Company, and it appeals. Affirmed.

For opinion below, see 198 Fed. 591.

Appeal from a decree of the District Court, Southern District of New York, awarding the libelants as owners of the steam tug "O'Brien" $318.50 for salvage services rendered the cargo of the lighter "Loyal," providing that the same should be paid by the appellant the F. W. Jarvis Company owner of said lighter, and denying the petition of said owner to limit its liability.

E. L. Baylies, of New York City, for appellant.

F. A. Spencer, Jr., of New York City, for libelant.

J. K. Symmers, of New York City, for the lighter.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. [1] The services rendered by the libelants were meritorious salvage services. Taking into consideration the conditions when the tug arrived, the nature of the services and the value of the property involved, the amount awarded by the District Court was reasonable and we see nothing in the conduct of the libelants after the rendition of the services to preclude them from receiving it.

The libelants looked for the salvage to the cargo, the owner of the cargo impleaded the owner of the lighter upon the ground that its vessel was unseaworthy and it was bound to answer for any salvage awarded; the vessel-owner sought to limit its liability. So the inquiry is three-fold:

(1) Was the lighter seaworthy?

(2) Was the vessel-owner bound to save the cargo-owner harmless from a salvage award?

(3) Was the vessel-owner entitled to limit its liability?

[2] That the lighter "Loyal" was unseaworthy seems established beyond question. She sprang a leak without having been subjected to any sea peril. The only inference in such circumstances is of unseaworthiness. Besides, the history of the vessel leads to the same conclusion.

The owner of the lighter was under obligation to the owner of the cargo to assume any salvage award caused by unseaworthiness of its vessel. The vessel-owner had a written contract with the cargo-owner for lighterage services covering an extended period. This lighterage contract implied an obligation that the lighters to be furnished under it should be seaworthy and if this one were in fact unseaworthy (as we have found she was) and if the unseaworthiness made the salvage services necessary (as it unquestionably did) the salvage award ran properly against the vessel-owner subject to any right to limit its liability.

[3] A vessel-owner is not entitled to limit his liability upon his personal contracts. The distinction between those contractual obligations which the owner of a vessel assumes himself by entering into them and those which are imputed to him for the acts of others on account of his ownership of the vessel, is well settled and is clearly pointed out in the opinion of the Circuit Court of Appeals for the Sixth Circuit in Great Lakes Towing Company v. Mills Transp. Company, 155 Fed. 11, 16, 83 C. C. A. 607, 612 (22 L. R. A. [N. S.] 769):

"And by extraordinary risk we mean those risks, arising from the conduct of, and contracts made by those who are beyond the personal supervision and control of the owner and yet have legal authority to bind him to answer for their conduct or contracts; or, to express the thought in another way, that the liabilities intended by this legislation were those peculiar to him as a shipowner and had been imputed to him because of his relation to the ship, and not those liabilities, whether for torts or from contracts, which spring from his own personal conduct or stipulations. It seems to us altogether unlikely that Congress intended to qualify the power of an owner to make contracts in relation to his ship which by the universal law would be valid if made about anything else and would be enforced in the courts in common-law actions. It would be an anomaly that a party competent to do business should be unable to make a valid contract about his own affairs, or be given such an immunity as to make his stipulations of uncertain value."

See, also, Richardson v. Harmon, 222 U. S. 96, 32 Sup. Ct. 27, 56 L. Ed. 110; McPhail v. Williams (D. C.) 41 Fed. 61; Gokey v. Fort (D. C.) 44 Fed. 364; The Amos D. Carver (D. C.) 35 Fed. 665.

In the present case the lighterage contract was signed by the owner itself. It was its personal contract. This contract carried with it, as we have seen, an implied contract that the lighters to be furnished under it should be seaworthy. There is an implied warranty of seaworthiness in the case of all vessels unless the contrary be expressly stipulated, and the liability for breach of the warranty sounds in contract. As said by the Supreme Court of the United States in Work v. Leathers, 97 U. S. 379, 380 (24 L. Ed. 1012):

"Where the owner of a vessel charters her, or offers her for freight, he is bound to see that she is seaworthy and suitable for the service in which she is to be employed. If there be defects known, or not known, he is not excused. He is obliged to keep her in proper repair, unless prevented by perils of the sea or unavoidable accident. Such is the implied contract where the contrary does not appear. * * * The owner is liable for breach of his contract."

The implied contract that the lighter was seaworthy attached to the express contract was, in our opinion, just as much the personal contract of the vessel-owner as the express contract itself. It was precisely as if written in the contract. The liability which the owner assumed was a liability springing from its own stipulation and not at all one imputed to it by responsibility for the acts of others. It was a contract from which the owner could not obtain immunity by the limitation statute, and this whether the breach of the contract was caused by the owner's acts or those of its agents. We are unable to accept the contention that a vessel-owner may be relieved from responsibility upon his personal contracts provided he does not break

them himself. The making of the contract is enough to place it out-side the statute.

The decree of the District Court is affirmed with interest and costs.

WARD, Circuit Judge (concurring in result). I will concur in the conclusion that the petitioner is not entitled to the benefit of the acts limiting the liability of vessel owners, but for a different reason, viz., because it has not shown its want of privity in or knowledge of the unseaworthiness of the lighter. All it has shown is that it has employed a ship's carpenter to repair its lighters from time to time. There is no proof of any regular system of inspection by any one, or that its managing officers relied upon a competent person, to whom the duty of regular inspection was committed. If the carpenter be conceded to have been such a person, it still lay upon the petitioner to prove that its managing officers had not, in point of fact, any knowledge of or privity in the lighter's unseaworthiness. The only testimony on the point is that of the president, who says that he "had no reason to think she was not able to do and perform the service [viz., the carrying of the cargo in question] properly." In view of the age of the boat, the price paid for her, and the small amount which has since been expended upon her, such testimony is quite insufficient.

But I cannot concur in the conclusion that the petitioner is deprived of the benefit of the acts on the ground that it has personally contracted to do the lighterage business of the Apollinaris Company, the owners of the cargo, for a fixed term. The contract contained no engagement on the subject of seaworthiness at all. The law itself imposed the duty. The breach of the implied warranty of seaworthiness is a tort, a breach of duty rather than a breach of a personal contract.

If the implied warranty of seaworthiness is to be regarded as a personal contract, shipowners cannot limit their liability in case of the death of or injury to passengers at all because the law implies in the contract of carriage a duty to carry with care. Nor can they ever limit in the case of loss of or damage caused by unseaworthiness to cargo carried under bills of lading, at least when signed by them as owners, as is the case with all regular steam lines. Such results would, I think, be a great surprise to all interested. As Judge Putnam, speaking for the Circuit Court of Appeals for the First Circuit in Quinlan v. Pew, 56 Fed. 111, at 119, 5 C. C. A. 438, at 446, said:

"Neither can the proposition of the appellant be maintained, that the statute does not apply because there was in this case a personal contract on the part of the owners, either express or in the form of an implied warranty, that the vessel was seaworthy. In nearly all the instances which the statute expressly enumerates as those to which the limitation of liability applies, there is necessarily an implied warranty, and frequently an express agreement in the form of a bill of lading; so that, if the contention of the complainant is correct, the wings of the statute would be effectually clipped. That there may be certain contracts, relating not so much to the navigation of the ship as to fitting her for sea, by which the owners charge personally their own credit, and which do not come within the statute, may be well contended, without at all touching the principles here involved."

LACOMBE, Circuit Judge. The Courts of Appeal in the First and Sixth circuits seem not to be in accord as to the interpretation of the

·section under consideration. The question is a close one, but I am inclined to concur with Judge NOYES in holding that this case pre- ·sents a personal contract of the owner, not affected by the statute. It would seem desirable that some effort should be made to secure a con- struction of the act by the Supreme Court, which will insure future uniformity of decision. ·

I ·concur in affirmance.