## PENDLETON v. BENNER LINE.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 178.   Argued March 11, 12, 1918.—Decided March 25, 1918.

Liability over is the reason for a bailee's right to recover the full value of the goods,—a reason which, whatever its inadequacy in history or theory as applied to torts, applies with real force to contract relations like those in this case.

A transportation company, holding itself out as a common carrier by sea, received consignments of goods, fixed and collected the freight, loaded the goods on a vessel which it chartered for their carriage, and issued bills of lading to the shippers signed by the master or agents of the vessel. The vessel proved unseaworthy and the cargo was lost. *Held*, that the company was liable over to the owners of the cargo and by subrogation to the insurers, and could recover its full value from the vessel owners under their express warranty of seaworthiness, in the charter party, even if technically the possession of the cargo was with the vessel owners.

The Act of June 26, 1884, c. 121, 23 Stat. 57, does not limit the liability of a ship owner upon his personal warranty of seaworthiness.

A charter party, containing a warranty of seaworthiness, purported to be entered into by a firm as agents of the vessel, but was signed in the firm name by one of its members who was part owner. *Held*, that the warranty was his personal contract.

An owner is liable on his express warranty of seaworthiness whether to blame for the breach or not.

217 Fed. Rep. 497, affirmed.

THE case is stated in the opinion.

*Mr. Harvey D. Goulder* and *Mr. Avery F. Cushman,* with whom *Mr. E. Henry Lacombe* was on the brief, for petitioner.

*Mr. D. Roger Englar* for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a libel brought by the Benner Line against the Pendleton brothers upon a charter party purporting to be made between "Pendleton Bros., agents of the schooner 'Edith Olcott'" and the libellant, and signed "Pendleton Brothers." The ground of the suit is that the vessel was unseaworthy at the beginning of the voyage and that by reason thereof she sank and her entire cargo was lost. Both Courts below held that the unseaworthiness was proved, and on the evidence that question may be laid on one side. As one of the Pendleton brothers was not interested in the vessel he was dismissed from the suit without objection. The other, the petitioner, who signed the firm name, being a part owner, was held by the District Court to be bound by the warranty of seaworthiness contained in the contract, but entitled to the statutory limitation of liability. Act of June 26, 1884, c. 121, § 18, 23 Stat. 57. 210 Fed. Rep. 67. The Circuit Court of Appeals held that the statute did not cover the case. 217 Fed. Rep. 497. 133 C. C. A. 349. A decree was entered against the petitioner for the total loss. Both Courts agreed that the Benner Line although owning none of the cargo was entitled to sue for the loss of it and this proposition and the matter of the applicability of the Act of 1884 are the two questions argued here.

The ground on which the right of the Benner Line to

recover the value of the cargo is denied is that the anomalous doctrine by which a bailee can recover the value of goods that he does not own (*The Beaconsfield*, 158 U. S. 503, 507), stands on the bailment, and that here there was no bailment to the Benner Line. The charter party provides that bills of lading be signed without prejudice to the charter. The bills of lading were signed by the master or agents of the vessel (the Benner Line), and, it is contended, bound only the vessel. The charter was not a demise of the ship, and it may be assumed, as the bill of lading seems to. assume, that the technical possession of the goods was in the ship owners, since they remained in possession of the ship. The Benner Line has not paid or been called upon to pay anything to the owners of the cargo, but brings this suit at the request of the underwriters on the same, who have paid for the loss.

But as was observed by the Courts below, the Benner Line held itself out to the public as a common carrier, solicited and received the merchandise that it offered to transport, by acceptance of such merchandise contracted to be answerable for the transportation, chartered the vessels to carry what it received, employed the stevedores who put it aboard, fixed and received the freight and signed or had the bills of lading signed in its office. It determined the vessel on which the cargo should go as against the owners of it or of the ship. The cargo went in the space it had hired. We agree with the lower Courts that the Benner Line did not disappear from its contract to carry the goods when the bills of lading were signed and that it would have been answerable to the owners, or to the insurance companies when they became subrogated to the owners' rights, if they had elected to sue it. The owners of the vessel had warranted the seaworthiness of the ship to the charterer, of course in contemplation that a cargo would be shipped as to which they would be liable in some form. Wherever in theory of law the tech-

nical possession may have been, we do not perceive why the charterer should be denied full damages upon the express contract when its liability over also was determined by contract exactly as was expected. The ground upon which bailees have been allowed to recover the full value of goods from wrongdoers has been stated for centuries to be their liability over. Y. B. 9 Ed. IV, 34, pl. 9, is an example of what has been repeated from that day to this. See *Brewster* v. *Warner*, 136 Massachusetts 57, 59. Whatever may be the inadequacy, in history or theory, of the reason as applied to torts, it applies with real force to contract relations like those in this case. The whole question is hardly more than technical as there is no doubt that this suit really represents the owners' interests since it is brought at the request of the insurers who have paid the loss.

On the proposition that the petitioner is entitled to limit his liability under the Act of 1884 it is urged that the act is an absolute limit, irrespective of privity or knowledge, in regard to contracts as well as torts, and that this contract, if it bound the petitioner at all, did so only as an indirect result of its execution. The last point hardly is intelligible. The petitioner signed the charter with the name Pendleton Brothers, which included himself, and apart from the fact that although described as agents the Pendleton brothers purport to be contracting parties, if we look only to the principals the petitioner was one of them as part owner of the vessel. The contract was between human beings and the petitioner by his own act knowingly made himself a party to an express undertaking for the seaworthiness of the ship. That the statute does not limit liability for the personal acts of the owners done with knowledge is established by *Richardson* v. *Harmon*, 222 U. S. 96. It was said in that case, p. 106, that § 18 leaves the owner "liable for his own fault, neglect and contracts." The principle was held to

apply to contracts less personal than this in *Great Lakes Towing Co.* v. *Mill Transportation Co.*, 155 Fed. Rep. 11, and in *The Loyal*, 204 Fed. Rep. 930. We are not disposed to disturb the very strong and deliberate intimations of *Richardson* v. *Harmon* in their application to the present case. It is said that the owners did their best to make the vessel seaworthy and that if it was not so the failure was wholly without the privity or knowledge of the petitioner. But that is not the material question in the case of a warranty. Unless the petitioner can be discharged from his contract altogether he must answer for the breach whether he was to blame for it or not.

*Decree affirmed.*