## THE ICE KING.

### Appeal of CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit. November 12, 1919.)

No. 16.

1. SHIPPING ⊙⇒208—OWNER OF TUG ENTITLED TO LIMITATION OF LIABILITY.
   Owner of a tug, under time charter for towage purposes, but manned and navigated by the owner, where the tug was seaworthy and manned by a competent crew at the time of the charter, *held* entitled to limitation of liability for loss of tows, resulting from the going ashore of the master, contrary to the rules and without knowledge of the owner, leaving the navigation in charge of the pilot, who 'was competent and had previously been reliable, but who became intoxicated and went to sleep at the wheel at night, allowing the tug to become stranded.

2. TOWAGE ⊙⇒4—NO IMPLIED PERSONAL WARRANTY BY OWNER OF SEAWORTHI-NESS OF TUG.
   There is no personal liability of the owner on an implied warranty that a tug under time charter for towage purposes shall remain seaworthy and properly manned and equipped at all times during the charter term.

3. TOWAGE ⊙⇒4—DUTY OF TUG TO TOW THAT OF ORDINARY CARE AND SKILL.
   A contract of towage imposes, not the duty of an insurer, but only the duty of exercising ordinary care and skill.

Appeal from the District Court of the United States for the Southern District of New York.

Petition in admiralty of the Cornell Steamboat Company, as owner of the tug Ice King, for limitation of liability. Decree denying limitation, and petitioner appeals. Reversed.

For opinion below, see 256 Fed. 895.

Kirlin, Woolsey & Hickox, of New York City (J. P. Kirlin, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey and Everett, Clark & Benedict, all of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. [1] This is a petition of the Cornell Steamboat Company, owner of the tug Ice King, to limit its liability for damage to scows M47 and M48, owned by the Morris & Cummings Dredging Company, and their cargoes, in tow of the tug on a trip from New York City to the dumping grounds and return. The tug was under time charter from the Steamboat Company to the Dredging Company, but was manned and navigated by the Steamboat Company. She had a double crew, and it is proved that just before starting from New York, December 24, 1913, about 7 p. m., the master and assistant engineer went ashore for the purpose of keeping Christmas Eve at home, in pursuance of an arrangement each had made with the pilot and chief engineer, respectively, that they would do double duty on the trip. This was in flat violation of the company's

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

261 F.—57

rule that no master, pilot, or engineer should leave a boat under any circumstances without first reporting at the office.

The pilot went on duty at 6 p. m. of December 24th and at about 12:30 a. m. of the 25th, when asleep at the wheel, was awakened by a jar apparently caused by collision with can buoy No. 1 of the Oil Spot, which lies eastward of False Hook Channel and about a mile from Sandy Hook beach. He instantly stopped and reversed his engines, and in this way fouled his hawser in the propeller. Finding it impossible to clear the propeller, he let his anchor go, ordered the scows to do the same, and says he saw them do it. Notwithstanding this the flotilla drifted in wind and tide upon the beach about 5 a. m. of the 25th, and the wind increased in the afternoon into a gale. No. 48 was towed off the same day by salvors, to whom salvage in the sum of $1,000 has been awarded, and the owners three weeks later salved No. 47; the tug being a total loss.

There is evidence that the pilot had drunk beer before the tug started and whisky when at the wheel. We concur in the finding of the District Judge that the accident and damage were due entirely to his misconduct and negligence. In this court the owners contended that the proximate cause of the damage was the failure of the scows either to have or to use anchors. The Sunnyside, 251 Fed. 271, 163 C. C. A. 427. There was no such charge made in the petition or at the trial. On the contrary, the petition alleged that the scows dragged their anchors and the only testimony at the trial was made by the pilot and a witness from the scows, who said in the course of their narratives that the scows did anchor. Under these circumstances we pay no attention to this argument.

The sole question in the case is whether the owners of the tug are entitled to limit their liability. The District Judge found that the owners had exercised due diligence and furnished a seaworthy tug, with a competent, skillful, and sufficient crew at the time of the commencement of the charter, and that the master and assistant engineer left the tug, and the pilot became intoxicated on the voyage, without the owners' privity or knowledge. The pilot was employed November 20, 1913, by Broad, the general manager of the company's fleet of over 60 tugs. It was his duty to employ the licensed officers, and theirs to employ the unlicensed men. He had a personal interview with the pilot, was well impressed by him, called up over the telephone the officers of former employers, viz. the Moran Towing & Transportation Company and Peter Cahill, who both recommended him. For over a month before the accident his conduct was entirely satisfactory. It is true that Broad made no specific inquiry as to the pilot's habits about drink, and, though it is now evident that he had been going down in this respect, we agree with the District Judge that the owners are not chargeable with any lack of care and diligence in employing him.

[2] Notwithstanding the foregoing, the District Judge held that the owners were under a continuing personal warranty that the boat should remain seaworthy and properly manned and equipped during the term of the charter. He relied upon decisions in this circuit, af-

firmed in the Supreme Court, which were personal contracts of the owners. Benner Line v. Pendleton, 217 Fed. 497, 133 C. C. A. 349; Id., 246 U. S. 353, 38 Sup. Ct. 330, 62 L. Ed. 770; Luckenbach v. McCahan Co., 235 Fed. 388, 148 C. C. A. 650; Id., 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522. If there was a warranty in this case, it was implied, and of course, if it is to be given the same effect as an express warranty, the owners are liable, whether at fault or not, and whether exercising due diligence or not.

[3] We know of only one decision as to such implied warranty in proceedings to limit liability, and that related to a contract for the carriage of goods. The Loyal, 204 Fed. 930, 123 C. C. A. 252. A contract of towage imposes, not the duty of an insurer, but only the duty of exercising ordinary care and skill. Assuming, however, that such an implied warranty does exist in a contract of towage; how far does it extend? Are the owners, having furnished a sufficient and competent crew, with officers duly licensed as required by law, to be held liable for such subsequent arrangements as were made in this case, and for the subsequent intoxication of the pilot while on the trip? To extend such a warranty in this way would go far to nullify the wholesome purposes of the law. We are not willing to do so, in view of the language of the Supreme Court in the latest decision on the subject (Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 335, 39 Sup. Ct. 292, 63 L. Ed. 631), in which Mr. Justice Holmes says:

"We very much appreciate the danger that the act should be cut down from its intended effect by too easy a finding of privity or knowledge on the part of owners, as also by too liberal an attribution to them of contracts as personally theirs. We are not disposed to press the law in those directions further than the cases go. But in this case, in addition to the finding of the owner's privity to the unseaworthiness, was the further finding that the contract was the personal contract of the petitioner—a finding that seems warranted if any contract by a corporation can fall within the class. That such contracts may impose a liability that cannot be transferred to what is left of the ship is decided. Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 149 [39 Sup. Ct. 53 (63 L. Ed. 170, 1 A. L. R. 1522)]."

The decree is reversed, and the court below directed to enter the usual decree in favor of the libelants for their damages, with an allowance for salvage to the Merritt & Chapman Derrick & Wrecking Company of $1,000, but limiting the petitioner's liability. Costs of this court to the appellant.