## THE LAKE ALLEN.

(District Court, E. D. New York. July 20, 1921.)

**1. Shipping ⬦137—Damage to sugar cargo held due to unseaworthiness.**

Damage to a cargo of sugar from leakage of sea water into a hold *held* due to unseaworthiness of the vessel by reason of structural defects, which manifested themselves under ordinary conditions of severe weather, and for which the vessel was not exempted from liability by Harter Act, § 3 (Comp. St. § 8031); it being shown that many of the rivets were not properly fitted or driven, allowing leakage around them, which defects should have been disclosed by a proper inspection.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Shipping ⬡⟿143—Owner of chartered vessel primarily liable for damage to cargo due to unseaworthiness.**

Where damage to the cargo of a chartered vessel was due to unseaworthiness, the owner is primarily and the charterer secondarily liable therefor.

In Admiralty. Suit by the St. Lawrence Sugar Refineries, Limited, against the steamship Lake Allen, the United States, claimant, and the Panama Railroad Company, impleaded. Decree for libelant.

Barry Wainwright, and Thacher & Symmers, of New York City (Earle Farwell and O. B. Wiren, both of New York City, of counsel), for libelant.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y. (C. C. Hoffpauir, of counsel), for the United States.

Richard Reid Rogers, of New York City, for Panama R. Co.

CHATFIELD, District Judge. [1] This action is brought for damages to a cargo of Peruvian sugar, brought on the steamer Lake Allen from the Panama Zone to New York, in March, 1919. The sugar, which had been in a warehouse several years, was in dark, discolored bags of poor quality, but according to the testimony of the witnesses no damage has been traced to any source except wetting by salt water, particularly affecting the three lower tiers in the No. 3 hold of the vessel. According to the testimony, the sugar from the other holds did not show damage from salt water, while that from the lower part of No. 3 hold showed the presence of large quantities of salt and the loss of a large portion of the contents of many of the bags in these lower three tiers.

The Lake Allen was a vessel built at Detroit in the year 1918, brought through the Canal, refitted at Boston, where she was in dry dock, and the outside of her hull inspected and painted. She had made two or more voyages during the winter of 1918–19 before the voyage in question. She was under charter to the respondent, the Panama Railroad Company, and on the voyage in question experienced what apparently was severe, but not extraordinarily rough, weather. During the voyage, some water was found in the various holds, which, according to the captain, amounted to five or six inches each watch, but which was pumped out with a few minutes' pumping; and the testimony also shows that the pumps sucked when the level of the water in the bilges was reduced to about three inches.

After some severe weather south of Cape Hatteras, water was discovered in No. 3 hold, to a depth of some three feet. The discovery was also made that the pump in this hold had become stopped through cotton waste in the valve or intake, which was removed and the water pumped out. The presence of this water had not been previously ascertained, because the waste in the valve or intake caused the pump to fail to act, and the engineer supposed that the pump was sucking with no water present. The finding of the water caused the officers of the vessel to examine her. Upon reaching New York she was put in ·

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dry dock and some 150 rivets repaired in the No. 3 hold. After being placed in the water, the chief engineer objected to the condition of the rivets, she was again placed in the dry dock, further search made, and some 300 more rivets in the various holds and in the tank cover replaced or repaired. According to an expert, who examined the vessel for the owners of the cargo of sugar at New York, some 80 rivets were discovered by him, in which either the head of the rivet was not concentric with the shaft of the rivet, or in which the rivet was not evenly hammered down against the side of the vessel, so that leakage was possible. He testifies that each one of the rivets which he so found defective was observed by him because seepage or moisture was at the time of examination present on the inside of the vessel, running down from the riveting in question.

According to the officers of the vessel, these rivets had worked loose under the strain of the weather encountered on the trip north. According to the expert produced by the libelant, these rivets had been improperly driven when the vessel was constructed, and had escaped detection when the vessel was inspected, later working loose or giving way under the vibration of the engines. This expert witness testifies that the defective rivets were so distributed and that the nature of their defects was such that strain from severe weather could not alone produce the result in question, as their condition was not caused by the mere strain or working of the plates, but rather through the vibration as it affected the individual rivet.

The leakage having resulted, therefore, from the structural defects, which manifested themselves under ordinary conditions of severe weather, it cannot be held that the damage was due to perils of the sea, within the exemptions of section 3 of the Harter Act (Comp. St. § 8031), unless due care to render her seaworthy be shown.

The vessel was unseaworthy, and the sole issue left is determination of responsibility therefor. In other words, has the owner or carrier (charterer) avoided liability by the stipulation that no liability shall result if due diligence has been used to make the vessel seaworthy? The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181; The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65. In The Thessaloniki (C. C. A.) 267 Fed. 67, and The Ontario (D. C.) 106 Fed. 324, it was held that certificates of examination and proof of inspection and repair were sufficient to show due diligence, etc., and thus the presumption of unseaworthiness was rebutted. As a consequence, the accident was held due to a peril of the sea. In The Aggi (D. C.) 93 Fed. 484, The Edwin I. Morrison, 153 U. S. 199, 14 Sup. Ct. 823, 38 L. Ed. 688, and Compagnie Maritime Française v. Meyer et al., 248 Fed. 881, 160 C. C. A. 639, casual inspections were held insufficient.

[2] In the case at bar inspection by tapping or examining the rivets should have shown the defect. The explanation seems to lie in the haste of construction and fitting for use. Further, while at sea, the clogging of a pipe seems to have prevented discovery of a defect which was (even then) causing leakage enough to make the cause an object of suspicion. These are not perils of the sea, and the libelant should re-

cover against the claimant, with the charterer as secondarily responsible therefor. Benner Line v. Pendleton, 217 Fed. 497, 133 C. C. A. 349; Id., 246 U. S. 353, 38 Sup. Ct. 330, 62 L. Ed. 770; The Julia Luckenbach, 235 Fed. 388, 148 C. C. A. 650; Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522.