## POCOMOKE GUANO CO. v. EASTERN TRANSP. CO. et al.

(District Court, D. Maryland.   February 13, 1922.)

### No. 762.

1. **Shipping ⬤208—Owner of barge held entitled to limit liability for loss of cargo.**

    The sinking of a barge through the breaking of a corroded iron discharge pipe from the toilet *held* not with the privity or knowledge or through the negligence of the owner, which precluded it from limiting its liability for loss of the cargo; it appearing that the use of iron pipes on such barges was usual and not considered dangerous, and that a short time before the sinking the barge had been delivered to a repair yard to be overhauled and such repairs made as found to be required.

2. **Shipping ⬤207—Implied warranty of seaworthiness in oral contract of carriage.**

    The implied warranty of seaworthiness of a barge furnished on oral request to carry a cargo does not stand in all respects on the same footing as an express warranty by the owner, and does not preclude him from limitation of liability for loss of cargo through unseaworthiness, due to an unknown defect not readily discoverable, and the failure to discover which was not due to his negligence, but to that of a repair yard employed to overhaul and repair the barge.

In Admiralty. Suit by the Pocomoke Guano Company against the Eastern Transportation Company, owner of the barge Columbia, and others. On petition for defendants for limitation of liability. Granted.

Harrington, Bigham & Englar, of New York City, and Frank, Emory & Beeuwkes, of Baltimore, Md., for libelant.

Samuel K. Dennis, of Baltimore, Md., for respondents.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSE, District Judge. The libelants, original and intervening, lost manure salts to the value of some $25,000 by the sinking of the barge Columbia, belonging to the respondent, hereinafter called the owner. The iron discharge pipe from its toilet had been in use for many years. After the accident it was apparent that it had become badly corroded, and had broken. It had no protecting valve to prevent the inrush of the sea, and in good weather and in quiet water the barge went down.

[1] She had recently come from a marine railway, whither she had been sent by her owner for her annual overhauling, under instructions to the shipyard people to go over her and to do whatever was necessary. An examination of the pipe, although not easy, was possible. It should have been made; but it was not, doubtless because nobody gave it a thought. It follows that the barge, when she took her cargo on board, was not only unfitted for the work she undertook to do, but the agents and the employees of her owner had not exercised due diligence to make her seaworthy. The Harter Act consequently affords the owner no protection. It nevertheless seeks to limit its liability. The libelants say it may not do so because: (1) The barge was not seaworthy, to the privity or knowledge of her owner. (2) Whether she was or not, the owner had personally contracted that she was seaworthy, and cannot limit its liability for the breach of its undertaking.

Certain experts produced by the libelants have testified that for some time it has not been considered good practice to use iron pipes for such purposes; but the evidence on the whole satisfies me that, whatever may be the case as to sea-going ships, and as to perhaps other kind of craft in other parts of the country, barges built and used in Chesapeake waters have not been equipped with lead or copper pipes. Moreover, so far as my experience goes, and so far as the reported cases seem to show, accidents from defects in their iron pipes have been extremely rare.

There is no evidence that the owner had knowledge or suspicion that the iron pipe was in itself dangerous, and therefore to permit its use could hardly be said to be negligence, and surely falls far short of justifying a contention that the barge was unseaworthy to the privity and knowledge of her owner. The defect in the pipe was not readily detectible, and the possibility of there being one was unlikely to suggest itself to any one not either practically or theoretically concerned with the building or repairing of ships.

[2] The barge was old, but at frequent intervals was sent to repair yards to be gone over. There was no personal negligence on the part of the owner, as distinguished from that for which the shipyard people were blameworthy. In this case there was no express warranty of seaworthiness. The agents of the libelants over the phone called up the owner's Norfolk agent and asked for a barge to take their cargo. The Columbia was sent, and that was all the bargain that was made. Whenever a vessel undertakes to do anything for hire, there is an implied warranty of seaworthiness, and, if such an implied undertaking stands in all respects upon the same footing as an express warranty personally made by the owner, then Pendleton v. Benner Line, 246 U.

S. 353, 38 Sup. Ct. 330, 62 L. Ed. 770, requires here a denial of the right to limit liability.

The Circuit Court of Appeals, however, for the Second Circuit, in The Ice King, 261 Fed. 897, intimated grave unwillingness so to hold. I am of the same mind. To take the view for which the libelants contend would be to hold that the owner may never limit his liability, either to cargo owner or to passenger, for any harm resulting from any lack of seaworthiness existing at the inception of the voyage, if it could have been discovered by the exercise of due diligence on the part of any agent, servant, or employee of the owner. It does not seem to me that the Supreme Court said anything in Pendleton v. Benner Line, supra, and the cases which followed it, to suggest that it had any such far-reaching consequences in contemplation.

It follows that the owner may limit its liability.