## THE CULLEN NO. 32.

### In re CULLEN FUEL CO., Inc.

#### Nos. 82, 83.

Circuit Court of Appeals, Second Circuit.

Dec. 12, 1932.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Single & Single, of New York City (Thomas H. Middleton, of New York City, of counsel), for appellee W. E. Hedger Co., Inc.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for appellee Long Island R. Co.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for appellee Port Fueling Corporation.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In calm weather and while lying in a slip in the East River, the deck scow Cullen No. 32 careened and cast her load. In so doing the scow not only lost her cargo and damaged herself, but also did injury to Pier 22 and a carfloat belonging to Long Island Railroad Company. Litigation resulted. Thereupon Cullen Fuel Company as owner of the scow filed a petition in the court below to limit its liability against the claims of Long Island Railroad Company for damage to its carfloat and pier, and the claim of W. E. Hedger Company, as bailee of the cargo. Cullen Fuel Company also filed a libel in personam against W. E. Hedger Company as demise charterer of the scow, for the damage to it. In the latter suit the charterer impleaded Port Fueling Corporation, the stevedoring corporation whose employees had loaded the scow with copper barytes discharged from a steamer berthed in the slip. The District Court found that the loading was properly done and the accident was caused by unseaworthiness of the scow. Accordingly the libel of Cullen Fuel Company and the petition impleading Port Fueling Corporation were dismissed. In the limitation proceeding, limitation of liability was denied the petitioner and the cause was referred to a commissioner to take proof of the damages sustained by the two damage-claimants. From both decrees Cullen Fuel Company has appealed.

We accept the finding of fact that the scow was properly loaded. The testimony was in direct conflict on this point and the trial court's finding under such circumstances is not lightly to be upset. The court was not obliged to credit Rockenbeil's testimony that loading continued after he observed the scow's list. Indeed, his testimony is somewhat vague as to the time when he first observed it. Moreover, the argument is most persuasive that unless the scow leaked her list would not have increased as it did after the loading ceased. We think the finding is supported that the scow was leaking, or subject to leaks as the pressure of her load increased her draft, when the cargo was put on board. In other words, she was then unseaworthy. It does not necessarily follow that she was so when chartered to the Hedger Company, but that was only two days before and the scowman testified that nothing had happened to his scow during the intervening time. The owner has the burden of proving seaworthiness when the barge was delivered under her charter. Taylor Bros. Lumber Co. v. Sunset Lighterage Co., 43 F.(2d) 700 (C. C. A. 2). We agree with the District Court that the Cullen Company has not carried that burden. Hence its libel against the Hedger Company and the petition impleading Port Fueling Company were rightly dismissed, for the damage to the scow was not proven to have been caused by any fault on the part of the charterer or the stevedores but was due to her own unseaworthiness.

Passing now to the limitation proceeding, the question arises whether the Hedger Company as bailee of the cargo can recover for its loss upon the Cullen Company's breach of warranty of seaworthiness. Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770, so decided, where the libelant, the charterer, was liable for the shipper's loss and was suing for the cargo underwriter. The present case will be controlled by that authority provided the Hedger Company is shown to be liable to the cargo owner, Grasselli Chemical Company. While it does not definitely appear what were the relations between the Hedger Company and the Grasselli Company, it was proved that the former agreed to carry the cargo for the latter and prima facie this made it liable for the loss. Taylor Bros. Lumber Co. v. Sunset Lighterage Co., supra. The lighterage contract implies a warranty that the lighters to be furnished under it shall be seaworthy. The Loyal, 204 F. 930 (C. C. A. 2); The Jung, shoved, 290 F. 733 (C. C. A. 2). If there were any express conditions in the contract

which would excuse the Hedger Company as against the cargo owner, they do not appear. Hence the proof was sufficient that the charterer was liable for loss of cargo due to the scow's unseaworthiness. See The Harper No. 145, 42 F.(2d) 161 (C. C. A. 2); S. C. Loveland Co. v. Bethlehem Steel Co., 33 F.(2d) 655 (C. C. A. 3). This liability is a proper element of damage in its suit against the owner upon the latter's covenant. Pendleton v. Benner Line, supra.

There remains the question whether the Cullen Company may limit liability upon its covenant. The scow was chartered under the usual oral contract arranged by telephone. The covenant of seaworthiness is an implied covenant and the authorities are not in accord as to whether such an implied obligation is to be deemed the personal contract of the owner in such sense as to preclude limitation of liability under the doctrine declared in Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770. In this circuit it has been given the same effect as an express contract. The Loyal, supra; see The Soerstad, 257 F. 130 (D. C. S. D. N. Y.); cf. The Ice King, 261 F. 897, 899 (C. C. A. 2). The opposite view was taken in Pocomoke Guano Co. v. Eastern Transp. Co., 285 F. 7 (C. C. A. 4). See, also, Quinlan v. Pew, 56 F. 111, 119 (C. C. A. 1). Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631, actually dealt with an implied warranty, as appears from the district court's opinion (The Benjamin Noble [D. C.] 232 F. 382, 389), although the Supreme Court did not allude to this fact and apparently treated the case as governed by Pendleton v. Benner Line, supra, and Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522, where the warranties were express. See comment on these cases in The No. 34, 25 F.(2d) 602, 607 (C. C. A. 2). We adhere to our own former ruling. In the court below limitation was denied upon the ground that the fault existed with the owner's privity or knowledge because no adequate examination of the scow was made before her delivery on charter. Since we follow The Loyal, the correctness of this ruling need not now be determined with respect to the Hedger Company's claim. Nor need it be decided with respect to the claim of Long Island Railroad Company for reasons which will hereafter appear.

Although to the charterer the owner warranted the seaworthiness of the scow, there was no such warranty to Long Island Railroad Company. Its claim sounds only in tort, and it has the burden of establishing that the damage to its pier and carfloat was caused by negligence, though aided by a presumption arising from the scow's colliding with its stationary property. The Buffalo, 56 F.(2d) 738 (C. C. A. 2). We are dealing with a collision, and the duty of the scow owner, breach of which imposes liability to the railroad company, is not the duty to have the scow seaworthy but merely the duty not to cause damage negligently. See The Kathryn B. Guinan, 176 F. 301 (C. C. A. 2); The Jamaica, 51 F.(2d) 858, 860 (D. C. W. D. N. Y.). To hold the owner liable for this collision damage it must appear that the owner was negligent in sending out the scow, since no negligence was shown in the management of her in the slip. In the case at bar the Cullen Company had no actual knowledge that she was in a leaky condition when sent out. The proof was that Sweet made a visual examination of her seams above the light water line, and went into her hold with a flash-light to look for leaks below the water line. No leaks were discovered. The scowman testified that she had been deep in the water with a load of brick shortly before. It is true that the seams were not proved with a trier which is admitted to be the only sure method of testing them while the vessel is light, but we cannot think that such a test must be made before each charter under penalty of a finding of negligence as against the world in sending out the boat without it. Every inference points to the belief that the leaks appeared when the scow was submerged by her load; hence we put little weight on the failure of the Cullen Company to produce records of the dry dock repairs. On the whole, we think the Cullen Company put in enough to overcome the presumption of negligence arising from the collision. This left the burden of proof resting on the railroad company, and we cannot say it has been carried. Accordingly the scow and her owner must be exonerated against the tort claims of the Long Island Railroad Company. It relies upon this court's recent decision in The Buffalo, 56 F.(2d) 738. But that turned upon the point that the presumption of negligence arising from the fact of collision had not been rebutted. While the opinion does not disclose what evidence the owner presented in attempted rebuttal, the record shows that the examination of the barge before she went out was less than that made of the Cullen No. 32, and that the bargee could not be produced to testify as to her condition then or thereafter. In the present case, as already stated, the

presumption was rebutted, and we cannot say that damage to other vessels was reasonably to have been foreseen in sending out the scow without a more thorough examination than that which was made; in other words, negligence was not proved. Cases such as Taylor Bros. Lumber Co. v. Sunset Lighterage Co., 43 F.(2d) 700 (C. C. A. 2), are to be distinguished because they relate to the duty owed to the carried cargo, not to other vessels.

Final decree affirmed, and interlocutory decree modified in accordance with the foregoing opinion.