**THE NAT SUTTON.**

**THE BLOOMFIELD.**

**THE HOLBROOK.**

**THE ARTHUR L. HABER.**

**In re W. E. HEDGER CO., Inc.**

**LEACH v. HEDGER TRANSP. CO., Inc.**

**CANADA ATLANTIC GRAIN EXPORT CO., Inc., v. SAME.**

**No. 15.**

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

788

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for petitioner W. E. Hedger Co., Inc., Owner of Tug Nat Sutton.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for libelant and claimant-appellee David E. Leach.

Otto & Lyon, of New York City (Henry E. Otto and George V. A. McCloskey, both of New York City, of counsel), for libelant-appellee Canada Atlantic Grain Export Co.

Single & Hill of New York City (Forrest E. Single and George B. Warburton, both of New York City, of counsel), for Transportation Co.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The District Court found, without indicating on just what it predicated its conclusion, that the damage to the Bloomfield and its cargo was caused by the negligence of the Sutton. There is no reason to believe that

conditions prevailing in the canal at the time and place of the grounding of the Bloomfield were other than those usually encountered by such a tug with such a tow, and, when it appeared that her flotilla was not taken around the bend without hitting the slope of the bank of the canal, the burden of proceeding to explain how that could have occurred without her negligence rested upon the Sutton. It must be taken for granted that prudent navigation under such conditions results in the safe navigation of the canal at this point by such a tug and tow times without number. As she failed to overcome the inference to be drawn from the fact that the Bloomfield did go aground, that the unusual occurred because she hauled the barge nearer the bank than due care permitted at her speed around the bend, the finding that her negligence caused the damage was justified. The Stirling Tomkins (C. C. A.) 56 F.(2d) 740; The Fred'k Lennig (C. C. A.) 45 F.(2d) 691; The Clarence P. Howland (C. C. A.) 16 F.(2d) 25; The Golden Age (C. C. A.) 6 F.(2d) 877; The W. G. Mason (C. C. A.) 142 F. 913. This damage was not caused by some unknown means at an unknown time and place with nothing on which to base an inference of negligence on the part of the tug as in Stevens v. The White City, 285 U. S. 195, 52 S. Ct. 347, 76 L. Ed. 699. See, also, The White City (C. C. A.) 48 F.(2d) 557.

As the servants and agents of the Transportation Company composed the crew of the Sutton, their negligence attributable to their employer was responsible for the damage to the barge and for this the Transportation Company is liable. Bushey & Sons, Inc., v. Hedger & Co. (C. C. A.) 40 F.(2d) 417; Cummings v. Penn. R. R. Co. (C. C. A.) 45 F.(2d) 152. Since the liability of the tug in rem for that damage was denied below and no appeal taken (see, however, The Carlotta (C. C. A.) 48 F.(2d) 110, as to liability) the claim of the Transportation Company of a right to limit its liability for the damage is all that remains to be considered in respect to the action brought by the owner of the Bloomfield. This cannot be decided without giving effect to the fact that the Transportation Company was not only the operator of the tug which had the barge in tow when the damage was done, but also then held that barge in its possession under a demise charter from the owner. Whatever the right of the Transportation Company, if any, would have been as charterer of the tug to limit any liability imposed by law for the damage to the barge of another which was occasioned by the tug's negligent towing without the privity or knowledge of the charterer and operator of the tug, and we leave that undecided, the damage to the barge, caused by its negligence while it had that boat under charter, with which we are now concerned, is not imposed by law upon it as the charterer and operator of the tug, but by its charter of the barge. It can make no difference that the Transportation Company's negligence which caused the damage was that of its servants aboard the tug. That was, nevertheless, as much its negligence as charterer of the Bloomfield as though its negligence had been some other failure to exercise due care in respect to that barge. As charterer of the barge it made a personal contract with the owner and clearly has no right to limit its liability under that charter for the damage to the boat occasioned by its own negligence. Great Lakes Towing Company v. Mill Transp. Company (C. C. A.) 155 F. 11, 22 L. R. A. (N. S.) 769. Nor do we understand that it is now claimed that a charterer may take any benefit under the limitation statutes in restriction of his liability to the owner for his negligent damage to the chartered boat he is by his contract under obligation to redeliver. The Act of 1884 (see 46 USCA § 189) as construed with that of 1851 (see 46 USCA § 183 et seq.) "leaves him liable for his own fault, neglect, and contracts." Richardson v. Harmon, 222 U. S. 96, 106, 32 S. Ct. 27, 30, 56 L. Ed. 110. Were it otherwise, the owner of a boat would have little incentive ever to charter it.

The cargo damage stands somewhat differently. As the Transportation Company was a private carrier of the grain, neither sections 1 or 2 of the Harter Act (46 USCA § 190 or § 191) are applicable. The G. R. Crowe (C. C. A.) 294 F. 506. It makes no difference whether section 3 (46 USCA § 192) applies to private carriage or not for the parties could make their own contract as to the carriage of this grain regardless of that, and so they did to the exclusion of the Harter Act. The Gerald A. Fagan (C. C. A.) 49 F.(2d) 215, 217. The Transportation Company personally agreed in the contract of carriage which it made with the owner of the grain that it would be responsible for all damage caused by its negligence or fault. Its negligence having caused the damage, its personal agreement to be responsible for damage so caused is binding upon it and excludes any right to limit liability arising from such negligence. The E. S. Atwood (C. C. A.) 289 F. 737; Pendleton v. Benner

Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770; The Loyal (C. C. A.) 204 F. 930; Luckenbach v. McCahan Sugar Refining Co., 248 U. S. 139, 149, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522. Though reluctance to extend the doctrine of personal contractual liability to exclude the operation of the limitation statutes was expressed in Capitol Transportation Co. v. Cambria Steel Company, 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631, the rule as already established was applied in that case. It might well be argued that, since the Limitation Act of 1851 (see 46 USCA §§ 183 et seq.) and that of 1884 (see 46 USCA § 189) are in pari materia, and the one supplements the other, Richardson v. Harmon, supra, damage to cargo caused by negligence of the carrier while the goods are in transit is recoverable from the carrier, if at all, by virtue of a maritime tort which the act of 1851 covers; that the test is not therefore one of personal contract as under the 1884 act, but rather one of privity and knowledge. We think, however, that this position is not now available. In Richardson v. Harmon, supra, both acts were placed on the same footing in respect to personal contracts, and, while what is said there may have been dicta, it was expressly carried into the opinion in Pendleton v. Benner Line, supra, and, since an express warranty of seaworthiness will exclude the right to limit, we can perceive no reason why an express contract to be answerable for damage caused by negligence will not have like effect. In both cases the promisor must either show legal grounds which entitle him to be relieved from his contract as a binding obligation, or he must make good as he has promised to the extent of the provable damages.

The owner of the Sutton, Hedger, by its contract with the Transportation Company, empowered the latter "In the name, on behalf and for the account of the Owner, to negotiate, arrange and enter into any and all contracts or agreements for the regular and proper operation, employment and use, including the charter or hire of the property, or the towage, carriage and/or storage of mails, freights, cargoes, vessels and/or passengers, by, in, upon or about any of the property." The owner was to receive 95 per cent. of the net profits from the operation of the tug. Both the owner corporation and the operator corporation had the same president, and it may well be said, though it is not now of particular moment, that this was an interfamily arrangement. What is important is the fact that the Transportation Company could, as Hedger's agent, make a contract of carriage in behalf of Hedger. As the only way any corporation can make a contract is by an agent, it is plain that the Transportation Company could enter into a contract of carriage with Canada-Atlantic by virtue of its agency in behalf of Hedger that would be as binding upon Hedger as though made by any other agent, and, when made within the scope of the agent's authority, be as much the personal contract of Hedger as any contract a corporation can make. Though this contract of carriage was made in the name of the agent, it provided that "The boat owner and/or operator and/or carrier shall be responsible for their negligence or fault. * * *" So it was expressly agreed that the owner as well as the operator and carrier should "be responsible" for "their negligence." Had this contract been no more than one of towage, The Ice King (C. C. A.) 261 F. 897, would be applicable. Indeed, it is perhaps reasonable to say that the contract so far as the Sutton was concerned was only a promise to tow with due care for the breach of which liability may be limited as pointed out in The Soerstad (D. C.) 257 F. 130. Yet the liability for damages which flow from the breach of a promise only to tow without negligence arises wholly because the law imposes it when the promisor is shown to have failed to do as he agreed, while the liability of Hedger for the negligence of the Sutton rests upon the express contract of the owner to be responsible for that negligence. The difference may be slight, but it is as real as the difference between an obligation imposed by law as the result of circumstances and one expressly assumed by agreement. We do not need to consider what would have been the status of the Sutton had there been no such express contract. Its liability cannot be limited for the same reasons that have persuaded us to deny limitation to the Transportation Company. As the negligent operation of the Sutton by the Transportation Company caused the damage, the Transportation Company is primarily liable, and the liability of the Sutton secondary. The Harper No. 145, (C. C. A.) 42 F. (2d) 161. See, also, the E. S. Atwood, supra.

Damages were awarded on the basis of the New York value of the grain as of October 26, 1926. No reduction was made for what Canada-Atlantic would have had to pay for the carriage of the grain to New York if the carrier had delivered it there. This was $1,680. Had the grain been carried safely

to New York, Canada-Atlantic would have had to pay the $1,680, and the net worth of the grain to it would have been the New York value less this amount. This should be deducted from the amount of the award which, having been made on the basis of New York value, now includes it.

Decree modified as to damages and to deny limitation to the Sutton for cargo damage; otherwise affirmed.