## THE FRED E. HASLER.

### PROCTOR & GAMBLE CO. v. ATLANTIC OIL TRANSIT CORPORATION et al.
#### No. 415.

Circuit Court of Appeals, Second Circuit.
May 29, 1933.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant succeeded in obtaining a decree, on the merits, against the appellee, for cargo loss on the tank barge Fred E. Hasler (D. C.) 51 F.(2d) 779. The barge sank loaded with whale oil, and the libel filed was said to be "in a cause of contract, civil and maritime." Liability was imposed because of the unseaworthiness of the Fred E. Hasler. It was after the decision of this court that appellee, by amendment to its answer, pleaded as a partial defense the right to limit its liability under the statute. When the cause was here before, we said:

"The contract of affreightment carried an implied covenant of seaworthiness which has at least a double aspect, namely, that the vessel shall be fit to receive cargo when loading begins, and shall be fit to sail at the time of sailing. * * * The dispute is whether the Hasler was fit to receive cargo when loading began, and this depends not solely upon the actual condition of the hatch covers but involves the knowledge of the bargee as to their condition. * * * Hence we need not decide the mooted question whether in every warranty of seaworthiness there is an independent covenant of fitness to lie laden, applicable after loading is completed and before the voyage starts. For, if the loading stage continues until the ship breaks ground, the covenant of 'cargoworthiness' must cover that whole period; certainly there can be no hiatus during which the owner is bound to nothing by his covenant."

We held that, as between the owner of the cargo and the shipowner, the latter must bear the loss for the unseaworthiness of the vessel.

The question of whether the shipowner may now limit its liability under the limitation statute turns upon whether the oral contract entered into by the shipowner, through its dispatcher, is a personal contract of the shipowner depriving it of the defense of statutory limitation of liability. Rev. St. § 4283; Act of June 26, 1884, c. 121, § 18, 23 Stat. 57, 46 USCA §§ 183, 189. Below it was held that the oral charter was not the shipowner's personal contract, and that, even if it were, limitation could be denied only for breach of an express warranty, and therefore limitation was granted.

Breach of an implied warranty of seaworthiness in a personal contract deprives the shipowner of limitation of liability. The Cullen No. 32, 62 F.(2d) 68 (C. C. A. 2); Tucker Co. v. Southwark Co., 24 F.(2d) 410 (C. C. A. 3); The Loyal, 204 F. 930 (C. C. A. 2). The negotiations between the appellees' president and the appellant's representative in the autumn of 1927 did not create the contract under which the barge Fred E. Hasler was furnished in April, 1929. The parties then agreed only upon one term of a contract, the price at which oil would be carried in subsequent transactions between them. The appellee was not bound to furnish barges, and the appellant was not obliged to furnish oil for carriage. Nor was the order for the barge by telephone, on April 13, 1929, an acceptance of an offer, continuing from the negotiations of 1927, to furnish barges at a prearranged price. The 1927 negotiations did not create a continuing offer binding appellee to furnish barges on appellant's acceptance. The appellant had its own barges, but at times needed additional barges, and the practice was that, if appellee had a barge available when needed, it was chartered. Appellee's president testified that often when appellant had oil for carriage no barge of the appellee was available and often when barges were available oil was not available for carriage.

The contract was made when the order for the barge was accepted by Capt. Long, an employee. That he had authority to accept orders for the hire of barges is unquestioned. He was appellee's tug dispatcher with full authority to order the movements of appellee's tugs and lighters. He also had authority to hire and discharge crews. He did not fix the rates or price for services rendered to the appellant, but this was done pursuant to the oral standing arrangement between the parties. He did, however, quote rates for individual orders for service. While it is true there was testimony that in the office with Long there was a chief dispatcher who was his superior in position of employment, still Long accepted orders for tugs and lighters with his knowledge and consent. Long was not a subordinate without authority to bind the appellee to the extent claimed. He had authority to make this contract, and limitation may not be granted upon the theory that his position was so subordinate that the contract should not deprive his principal of limitation of liability.

The purpose of the limitation of liability statute was to exempt owners, beyond the value of the vessel and freights due, from the

consequences of the acts, contractual or tortious, of the master, crew, or agent regulating the vessel beyond the control or supervision of the owner. The contracts of the master or other agent on the voyage or in foreign ports bind only the ship. But the reason of that rule should forbid its application to contracts of charter hire entered into by an agent of the owner with full authority and under the immediate supervision of the owner no matter how subordinate a position the agent may occupy in the organization of the corporate owner. In most corporate enterprises, the routine of business established by responsible officials leaves to subordinates full authority for the commission of the acts which create the corporation's contractual obligations. If the routine established gives a subordinate the authority, the corporation cannot insist that only more important officials should bind it to personal obligations. Its personal obligations should be determined by the authority of the one making the contract to transact that business and not by the importance of his official positions. Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770; Capitol Transp. Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631; Sun Oil Co. v. Dalzell Towing Co., 55 F.(2d) 63 (C. C. A. 2), affirmed 287 U. S. 291, 53 S. Ct. 135, 77 L. Ed. 311; Great Lakes Towing Co. v. Mills Transp. Co., 155 F. 11, 22 L. R. A. (N. S.) 769 (C. C. A. 6).

The implied warranty of seaworthiness is a promise to pay for the consequences of unseaworthiness, In re Pennsylvania R. R. Co., 48 F.(2d) 559, 566 (C. C. A. 2), a promise to be performed by the obligor himself and not by the intervention of others. The No. 34, 25 F.(2d) 602 (C. C. A. 2). Since Capt. Long had authority to enter into the contract, which implied a warranty of seaworthiness, the authority thus conferred upon him results in the appellee being bound by his implied warranty.

But it may be said that the corporate agent's authority determines only the validity of the contract but not the extent to which it may be enforced under the limitation of liability acts; that the policy of the statute permits limitation except where a responsible official acts, and so determines not only the validity of the contract, but also unlimited liability under it. Long's position in the corporation was sufficient to deprive it of limitation under this rule. He accepted orders for tugs and lighters and was a manager of the corporation within the rule announced in the cases holding that contracts of a corporate

manager are personal to the corporation. Capitol Transp. Co. v. Cambria Steel Co., supra; The Cullen No. 32, supra; The Loyal, supra; Great Lakes Towing Co. v. Mills Transp. Co., supra. Since the contract was personal within the rule stated, limitation should have been denied.

Decree reversed.