[1] Counsel for defendant has fallen into error in assuming that section 215 of the Penal Code is the same as the old section 5480, United States Rev. Stat. The cases cited in support of the contention that the indictment must charge that the scheme to defraud was to be executed by opening or intending to open correspondence with some person or persons through the post office establishment of the United States, or by inciting some person to open communication with the writer, are no longer the law in this respect. United States v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548; United States v. Maxey (D. C.) 200 Fed. 997; United States v. Goldman (D. C.) 207 Fed. 1002; United States v. Young (D. C.) 215 Fed. 267. In United States v. Young, supra, the Supreme Court said,

---

## THE FORDE.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

### No. 64.

COLLISION ⊙═74—PRESUMPTION AGAINST DRIFTER NOT REBUTTED.

Evidence, if not affirmative proof of negligence of vessel, which, in a harbor, dragged anchor and drifted against another anchored vessel, held not to rebut presumption against it; the only watch, at night, in threatening weather, being a landsman, and no one else being called till it was too late to put out the second anchor to prevent damage.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by the Neptune Line, Incorporated, against the steamship Forde, her engines, etc.; H. Kuhnle, claimant. Decree for libelant, and claimant appeals. Affirmed.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Haight, Sandford & Smith, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (Geo. V. A. McCloskey, and William J. Martin, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. On the night of December 13–14, 1917, the steamship Forde lay at anchor on Red Hook Flats, New York Harbor. Libelant's barge Pittston was similarly anchored at a distance which we find to have been nearly 900 feet. The wind was from northeast to east all the 13th, and until about 3 a. m. on the 14th, with an hourly movement never above 39 miles, until between 2 and 3 of the 14th, when it rose to 41; maximum velocities exceeding 29 miles occurred in every hour but one after 5 p. m. on the 13th. Snow began shortly after noon of the 13th, and fell continuously until 2:20 a. m. of the 14th, when it turned to sleet, and so continued for about an hour. When to this undenied description of most unpleasant weather is added the statement of the Forde's master that he looked at his barometer during the evening of the 13th and it was not "very low," we accept the testimony for libelant which describes the night as "threatening."

Certain it is that libelant's master stayed up all night watching events, while the Forde's officers (who were the only crew aboard her) went early to bed, leaving as sole anchor watch a landsman (harbor watchman) whose duty, as described by himself, was to "keep my eye out that nothing is molested or interfered with while the men are sleeping." At about 3 a. m. of the 14th the wind shifted to northwest and blew with a maximum velocity of 88 miles, so that the total movement between 3 and 4 a. m. was 73 miles. In this hurricane the Forde dragged her anchor, and drifted into collision with the Pittston, inflicting the injury for which this action was brought.

Cases of this kind start with the presumption against the drifting vessel stated in The Louisiana, 3 Wall. 164, 18 L. Ed. 85, and since it is not claimed, in this court that the Pittston in any way contributed to disaster, the inquiry is narrowed to the question whether the Forde has affirmatively shown that she was the helpless victim of vis major. That the storm was violent is admitted; that the watchman on the steamer did as he was told, and called the officers when he thought circumstances required it, is proven; but it is also proven by the Forde's own testimony that in threatening weather her deck was left with no one on it to start the second anchor, and the officers did not get on deck and do that obviously necessary act until the vessels were, if not in actual contact, so close that damage was inevitable.

We think such testimony, if not affirmative proof of negligence, wholly fails to rebut the presumption against drifters; and when there is added thereto the fact that the Pittston, similarly situated, put out her second anchor over an hour and a half before collision, we think claimants have failed to justify their conduct. We have not referred to

evidence tending to show that the Forde's second anchor was not in condition to be effective, and that the barometer was giving far more warning of coming trouble than the steamship master admitted. On these points the District Judge made no definite finding, and we think the result below sustainable, without expressing our own opinion thereon.

Decree affirmed, with costs.