### Petition of DIAMOND COAL & COKE CO.

(District Court, W. D. Pennsylvania. March 17, 1923.)

1. **Shipping ⚖209(3)—Barge owner held presumptively negligent and liable for injuries when barges broke loose.**

   Though the burden of establishing the negligence of a barge owner, whose barges broke loose on the rising of a river and damaged property, was primarily on the injured party, when the barges went adrift, the owner was presumptively negligent, and liable for resulting injuries.

2. **Shipping ⚖209(3)—Finding of negligence in manner in which barges were fastened held warranted.**

   In a proceeding by corporate barge owner to limit its liability, under Rev. St. § 4283 (Comp. St. § 8021), and section 4289, as amended by Act June 19, 1886, § 4 (Comp. St. § 8027), to the value of its barges, which broke loose during the rise of a river, in which respondents filed claims for damages, a finding of negligence in the manner in which the barges were secured *held* warranted.

3. **Admiralty ⚖77—Opinion of commissioner, who heard and saw witnesses, held entitled to great weight.**

   Where evidence is conflicting, the opinion of the commissioner, who saw and heard the witnesses, is entitled to great weight.

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Witnesses** ⊙⇒311—**Appearance, manner of testifying, and candor, or lack of it, important in determining credibility.**

The character and manner of a witness, as disclosed by his appearance, manner of testifying, and apparent candor, or lack of it, etc., may be largely controlling in determining his credibility, and the weight to which his testimony is entitled.

5. **Damages** ⊙⇒69—**Allowance as compensation for delay in paying damages, measured by legal interest rate, held proper.**

Though interest as such is not allowable on damages ascertained to have been suffered by claimants from the breaking loose of defendant's barges, which collided with claimant's property, in allowance as compensation for delay in paying such damages could be made, measured by the legal interest rate.

In Admiralty. In the matter of the Diamond Coal & Coke Company, owner of barges Nos. 268, 253, 301, 274, 308, 265, 264, 285, and 269, for limitation of liability. On petitioner's exceptions to the commissioner's report. Exceptions overruled and dismissed, and report of commissioner affirmed.

Decree affirmed in 297 Fed. 238. See, also, 297 Fed. 246.

McIlvain, Murphy & Mohn, of Pittsburgh, Pa., for petitioner.

THOMSON, District Judge. This petition was instituted by the Diamond Coal & Coke Company for limitation of liability, growing out of a collision resulting in damages between barges of petitioner and certain water craft of the Hazelwood Dock Company and the Iron City Sand Company, respondents. Limitation of liability was claimed on the ground that the collision, and resulting damages, occurred without the privity or knowledge of the petitioner; the petitioner also denying, at the same time, all legal liability. Rev. St. § 4283 (Comp. St. § 8021) provides: -

"The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

Section 4289 and supplements (Comp. St. § 8027) make the act applicable to all vessels used, inter alia, in inland navigation, including canal boats, barges, and lighters. Under the act, all claimants for damages are required, within a time specified, to file their claims before the court in these proceedings, or be thereafter barred. In obedience to the statute, the Hazelwood Dock Company and the Iron City Sand Company filed answers denying petitioner's right to limit its liability, because, first, petitioner's barges had been abandoned and were no longer used in its business, and hence were not proper subject-matter for the application of the act relating to limitation of liability; and, second, because the accident and damages which resulted did not occur without the fault, privity, and knowledge of petitioner. Respondents also filed their respective claims for damages, as they were required to do under the act. Thus were raised two issues: One, the question of

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

petitioner's right to limit its liability; and the other, respondents' right to recover damages because of the negligence of petitioner's servants. In harmony with the common practice in such cases, the first question was tried before the late Hon. Charles P. Orr, who found against the petitioner's right to limit its liability, basing his decision on two grounds: First, that the petitioner had not satisfied the court that the injury was occasioned "without the privity or knowledge of the petitioner"; and, secondly, because the barges, by reason of their condition, were not vessels used on the lakes or rivers in inland and navigation, and hence not proper subject-matter for the application of the act relating to limitation of liability. The court also held that the testimony—

"clearly shows that the breaking away of the barges, and their subsequent collision as they moved down stream, occurred as the result of negligence which cannot be said to have been 'without the privity, or knowledge, of such owner,' and, further, that said barges had been so withdrawn from navigation that they could not be included in the terms 'vessels used on the lakes or rivers or any inland navigation.' "

I understand, from the situation, that the question of limitation of liability is not now before the court; an appeal having been taken from Judge Orr's decision to the Circuit Court of Appeals, which appeal is now pending. But the issue between the parties under the pleadings, which was the subject of the decision, was as to the petitioner's privity or knowledge of any matter which might have caused the accident, and not whether there was or was not negligence in the handling of petitioner's fleet. This question, with the question of resulting damage, if negligence is established, is now for us to determine.

[1] While the burden of establishing negligence is primarily upon the plaintiffs, when the fleet of barges went adrift the owner is presumptively negligent, and liable to the injuries resulting. In other words, the burden shifts upon it. In The Louisiana, 70 U. S. (3 Wall.) 164–173 (18 L. Ed. 85), the Supreme Court said:

"The collision being caused by the Louisiana drifting from her moorings, she must be liable for the damages consequent thereon, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented."

[2-4] On the question of petitioner's negligence, arising out of the manner in which petitioner's fleet was secured to the shore and the causes which set it adrift, I have considered with earnest care the testimony relied on by the respective parties, as referred to and discussed in the very full and elaborate briefs submitted by counsel, as well as the report of the commissioner appointed by the court to take the testimony and report his findings thereon. Before the commissioner it was stipulated that all the evidence theretofore taken by him on the application of the petitioner for limitation of liability should be considered as in evidence on the issues before the commissioner. In addition to this, evidence covering almost 400 pages was taken on the question of the negligence of petitioner and the respective amounts of damages sustained by the claimants. From the record containing this mass of

testimony diametrically opposite conclusions might be reached, each based on testimony seemingly substantial and credible. But the commissioner saw the witnesses and heard them testify, and this is a matter of substantial importance. When the evidence is transcribed to the written page, much of value bearing on its probative force is wholly lost. It can then only be measured by the words which the witness used. The character and make-up of the witness as disclosed by his appearance; his manner of testifying; his apparent candor or lack of it; his hesitancy, arising from uncertainty as to the fact, or his positiveness, based on the certainty of conviction—these and other like considerations may be largely controlling in determining the credibility of a witness and the weight to which his testimony is entitled. The opinion of the commissioner, therefore, is entitled to great weight on the questions of fact as to defendants' negligence, and the amount of damage resulting therefrom. Negligence on the part of the petitioner has been found by the commissioner, and he has, after the taking of considerable testimony, fixed the amount of damage resulting to each of the respondents.

When we consider that the barges were very old and in bad condition; that there did not, therefore, exist the same incentive 'for the exercise of care in fastening them securely as there would have been, had they been valuable; that they were not moored at a regular landing, but along the unused shore or bank of the river; that the current of the river near that place was towards the opposite shore; that the flood that carried the barges away was by no means an unusual or extraordinary one, except, perhaps, in the single respect that the rise was unusually rapid, this fact, however, probably bearing only on the question of the companies being taken by surprise, and neglecting to do something which they otherwise might have done, of which there is no claim in this case, as the company had notice of the approaching flood; that there was not much drift on the side where the boats were tied; that no one saw the barges struck by any heavy floating object, although several persons were on the bank nearby at the time they were swept away, and testified, in substance, that "when the boats went away, it just seemed like the water kept rising up until they got floated well and away they went; they just floated right down the river"; that the saplings or trees to which they were lashed grew in at least partially filled ground, and were torn out of root and carried away with the boats; that one of the defendant's employees was called on the telephone, and notified that the barges were not tied safely, and notifying them that, if anything happened to the fleet, and it broke loose, and any damage was done, the Diamond Coal & Coke Company would be held responsible; and that some effort was made by the petitioner to further secure the boats. When all these facts and circumstances are taken into consideration, I am not prepared to say that the commissioner was in error in holding the defendant guilty of negligence. It would appear that the burden, shifted upon the petitioner to exonerate itself from negligence when the barges broke loose, has not been satisfactorily met.

On the question of damages, the commissioner's report indicates that the respective claims were given careful consideration in an endeavor to make a reasonable and conservative estimate. In the case of the Hazelwood Dock Company, the wages for 48 days' labor in cleaning up rubbish and wrecked timbers was reduced from $6.50 to $4 per day, and its claim of $2,500 for loss of business or profits, was wholly disallowed. In the case of the Iron City Sand Company, the first, second, third, fourth, and fifth claims, which were not seriously in dispute, were allowed. The claim for demurrage was disallowed. The sixth item was a claim for detention of the hoist for a period of 22 days, being a charge of $75 per day, less 25 per cent. estimated profit amounting to $1,650. The commissioner held that the comparative profits and depreciation in such a piece of machinery, should have been proven by more reliable and satisfactory testimony. Not being satisfied, under the evidence, as to the validity of the claim, it was disallowed.

[5] As to this, I cannot say that the commissioner was in error. On the amounts of the damages ascertained to have been suffered by the two claimants, respectively, the commissioner allowed interest from the date of the loss to the date of the filing of the report, a period of more than 3½ years. The damages recoverable do not bear interest as such, but an amount may be allowed as compensation for delay in payment, of which the legal rate of interest is regarded as the fair legal measure. The amount awarded as interest, or by way of compensation, or delay in payment, which did not necessarily follow the commissioner's finding as to damages, would compensate for any error which might have been made in disallowing any item of claimants' demand.

The several exceptions filed by the respective parties to the commissioner's report are thereafter dismissed, and the report confirmed. And now, to wit, March 17, 1923, after full consideration of the exceptions filed to the report of the commissioner, on behalf of the Diamond Coal & Coke Company and on behalf of the Iron City Sand Company, as set forth in the opinion filed herewith, the said exceptions are hereby overruled and dismissed, and the report of the commissioner is hereby affirmed.