56 F.2d 738 (1932)
THE BUFFALO.
GREASON, SON & DALZELL, Inc.,
v.
ERIE R. CO.
THE PRESIDENT.
No. 174.
Circuit Court of Appeals, Second Circuit.
March 7, 1932.
*739 Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Adrian J. O'Kane, both of New York City, of counsel), for appellants owners of the barge President.
Wm. F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for libelant-appellee Greason, Son & Dalzell, Inc.
Park, Lynch & Hagen, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for claimant-respondent-appellee.
Alexander, Ash & Jones, of New York City (Edward Ash and Lawson R. Jones, both of New York City, of counsel), for libelant-appellee Fuel Transportation Co., Inc., and another.
Single & Single, of New York City (Thomas Hazelhurst Middleton, of New York City, of counsel), for Rubel Coal & Ice Corporation, as owner of the cargo of coal laden on the barge Transportation No. 50.
Before L. HAND, SWAN, and CHASE, Circuit Judge.
CHASE, Circuit Judge (after stating the facts as above).
The fact that the President sank at her berth raised a presumption of unseaworthiness which she had to rebut to escape liability for damage to her own cargo. The Jungshoved (C. C. A.) 290 F. 733; The Harper No. 145 (C. C. A.) 42 F.(2d) 161. Her failure to rebut that presumption fixed her liability for the damage to that.
The damage to the No. 50 and her cargo was caused by the collision when the President struck her in sinking. Both barges were without motive power. Certainly the President owed the No. 50 no direct obligation to be seaworthy, but only the duty to be free from negligence resulting in damage. While the seaworthiness of the President, or the lack of it, may not be wholly ignored, it is important only as it bears upon the negligence, if any, which caused her to collide with the No. 50.
It must appear that the President negligently collided with the No. 50 and so caused the damage to that boat and her cargo to hold the President for such damage (The Clara, 102 U. S. 200, 26 L. Ed. 145), and there is no direct proof to show what caused the sinking which brought the President into contact with the No. 50. Yet to escape liability for this collision damage it was necessary for the President to rebut the presumption of negligence arising from collision with a moored vessel. The burden upon a drifting vessel that collided with another to prove that the collision was not attributable to her fault was established in The Louisiana, 3 Wall. 164, 18 L. Ed. 85. It has since been recognized in numerous cases that a vessel which drifts into collision will be presumed to be at fault until the contrary is made to appear. Pennsylvania R. Co. v. James McWilliams Towing Line (C. C. A.) 277 F. 798; The D., L. & W. No. 442 (C. C. A.) 30 F.(2d) 250; The Bertha F. Walker (C. C. A.) 220 F. 667; Petition of Diamond Coal & Coke Co. (D. C.) 297 F. 242, affirmed (C. C. A.) 297 F. 246; Eastern Dredging Co. v. Winnisimmet Co. et al. (C. C. A.) 162 F. 860; The Forde (C. C. A.) 262 F. 127. The movement of the President in colliding with the No. 50 was essentially like the uncontrolled conduct of a drifting vessel in so far as it affected the No. 50. The important feature is that the President was out of control, and it is incumbent upon those charged with the duty of keeping her under control to show that she did not come into damaging contact with the No. 50 through their negligence.
While the unrebutted presumption of unseaworthiness which made the President liable to her own cargo did not carry over to the No. 50, the presumption of negligence which arose from her collision with a moored vessel when out of control placed the burden of proceeding to rebut that presumption upon the boat that did the damage. Having failed to make such proof, she was cast.
The libels in personam against Greason, Son & Dalzell, Inc., are dismissed, with costs. In all other respects the decree is affirmed.