### THE EMERGENCY.

### THE THOMAS J. GANTLY.

CONNERS MARINE CO., Inc., v. SHAMROCK TOWING CO., Inc., and three other cases.

District Court, S. D. New York.
Aug. 8, 1934.

Alexander, Ash & Jones, of New York City (Edward Ash and Lawson R. Jones, both of New York City, of counsel), for petitioner Shamrock Towing Co., Inc.

Thomas A. McDonald, of New York City, for Conners Marine Co., Inc.

Duncan & Mount, of New York City (F. A. Bull and H. W. Dieck, Jr., both of New York City, of counsel), for claimant Globe & Rutgers Fire Ins. Co.

Raymond E. Stefferson, of New York City (Edwin M. Bourke, of New York City, of counsel), for Luckenbach Trap Rock Corporation.

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge, Willard M. L. Robinson, and John T. Condon, all of New York City, of counsel), for City of New York.

PATTERSON, District Judge.

These cases arise from the capsizing of the scow Gantly on June 7, 1930. At the time of the trouble the Gantly lay in the slip between Piers 14 and 15, Staten Island, with a full load of crushed stone, having been towed there the previous day. The water was smooth and the weather fair. Early in the morning of that day the Gantly was observed to have a bad list to port. The captain complained that she was leaking. An effort was made to shift some of the vessels in the slip, so that the scow might be brought to the bulkhead and unloaded; but as she was nearing the bulkhead she turned completely over, dumping her cargo and dropping overboard two men who lost their lives. In capsizing she struck the lighter Emergency, which also capsized, dropping a cargo of cement that she was carrying. The Gantly's stern struck the bulkhead also in surging about. Suits having been commenced by the owner of the Emergency and by the owner of the Emergency's cargo, the Shamrock Towing Company, owner of the Gantly, brought suit for limitation of liability. Limitation was resisted by the charterer, which was owner of the cargo lost on the Gantly, and also by the owner of the Emergency, the owner of the Emergency's cargo, and the city of New York. The city's claim was for the expense involved in removing the crushed stone and cement from the bottom of the slip. In addition to the suits already mentioned, the Shamrock Company, as owner of the Gantly, brought suit against the charterer for failure to return the scow in good condition. The cases were tried together.

The Gantly was a deck scow of conventional dimensions, used for carrying crushed stone, brick, and the like. She was built in 1909, and thoroughly recaulked in 1915. The Shamrock Company bought her in 1923 and kept her in rather steady duty. Repairs were made from time to time as the need for them was observed. The caulking above the light water line had been renewed as needed, but nothing in the way of caulking below that line had been done since 1915. The proof is that caulking on similar vessels ordinarily retains its usefulness for from six to eight years.

For about a year prior to June 7, 1930, the Gantly had been on charter to the New York Trap Rock Corporation and had carried heavy cargoes of crushed stone without trouble of any kind. At the time of the accident she was on charter to the Luckenbach Trap Rock Corporation, having been chartered to that concern on May 23, 1930, under an oral hiring. She had carried a similar load a few days before the time of the accident without apparent trouble.

At the survey there was general agreement that the Gantly's caulking above the light water line was good. Opinions differed as to the condition of the caulking below. The weight of the testimony was that the oakum there was soft and badly deteriorated, as well as slack in many places. In one place the bottom had been caulked on the inside, evidently an emergency measure by the captain. One of the stern planks was found broken or cracked, and the experts for the Gantly attributed the sinking to the leaking of water through that break or crack; but this is altogether unlikely. The plank was probably fractured when the Gantly struck the bulkhead in the course of capsizing; certainly no evidence of other impact was offered. Moreover, it was shown by calculations of weight and displacement that prior to the capsizing this plank was above the water line.

There was proof by the petitioner that the scow had been inspected regularly. The superintendent of repairs had gone over her about two weeks prior to the accident and had made minor repairs. He found no leaking. A runner who made the rounds of the Shamrock scows had gone over the Gantly three days before the accident and saw nothing amiss. The captain of the scow sent in reports daily by post card, and in these reports made no comment as to her condition. But none of these inspection measures covered an examination of the scow below the

light water line, except to the extent that visual inspection might be made of the interior of the scow. At no time during the seven years that the Shamrock Company owned her had she been put in drydock and the caulking on the bottom examined.

1. The evidence points to a finding that the Gantly was unseaworthy in respect to the caulking below the light water line and that the capsizing was due to such unseaworthiness. We start with a general presumption of unseaworthiness from the fact that the scow turned over in her slip, in smooth water, and without external contact of any kind. The Jungshoved, 290 F. 733 (C. C. A. 2); The Harper No. 145, 42 F. (2d) 161 (C. C. A. 2). The evidence, far from rebutting the presumption, reinforced it. The proof localized the unseaworthiness to the condition of the caulking on the bottom of the scow, where the oakum was so old as to be relatively useless. By the weight of the testimony, the caulking below the light water line was found on the survey to be in such a state of deterioration that the scow would have bad leaks there. This leaking condition is no more than what would be expected from the admitted fact that the caulking on this part of the vessel had not been renewed for 15 years. The unseaworthiness was operative not merely at the time of the capsizing, but also at the time of the charter to the Luckenbach Company some three weeks earlier.

The finding of unseaworthiness is decisive of the issues between the owner and the charterer. There is no liability on the part of the charterer for failure to return the scow in good condition, and the suit brought by the owner of the Gantly to enforce such alleged liability must be dismissed. On the other hand, the owner of the Gantly is liable to the charterer for loss of the cargo, because of breach of implied warranty of seaworthiness, and this, being a liability arising out of the personal contract of the owner, is a liability which the owner may not limit. Cullen Fuel Co. v. Hedger, Inc., 290 U. S. 82, 54 S. Ct. 10, 78 L. Ed. 189, affirming The Cullen No. 32, 62 F.(2d) 68 (C. C. A. 2).

2. The relationship between the Shamrock Company and the others who suffered damage was not a contractual one. They were strangers, and the liability of the owner of the capsized scow to them turns on whether or not there was negligence. The Cullen No. 32, supra. There is a presumption of negligence from the capsizing and the resultant collision of a scow out of control with a stationary vessel. The Kathryn B. Guinan, 176 F. 301 (C. C. A. 2); The Buffalo, 56 F.(2d) 738 (C. C. A. 2). In an effort to rebut the presumption the owner sought to show that the scow had previously carried similar loads without apparent trouble; that she had been inspected two or three weeks before the accident; that repairs had been made after such inspection as well as after similar inspections at prior times. The inspections were doubtless good as far as they went. But the lower part of this scow had not been recaulked for fifteen years. The oakum there had ceased to serve its purpose. Although the owner knew that the caulking on the bottom had not been renewed or repaired for fifteen years, no inspection was ever made to ascertain its condition. Such caulking cannot be examined from the inside. Under ordinary circumstances it may be a reasonable practice with a scow of this type to wait for leaks in the bottom before dry docking and inspecting the bottom. But when the owner is aware that the caulking there is fifteen years old, as against an average life of from six to eight years, due care requires that the state of the caulking on the bottom be ascertained rather than that further chances be taken. Sanbern v. Wright & Cobb Lighterage Co., 171 F. 449 (D. C. N. Y.). There is a causal connection between the maintenance of the scow in this condition and the damages brought about by her capsizing. I am of opinion that there was a failure to exercise reasonable care, and that the owner of the Gantly is responsible for the damages that resulted. In this feature the facts are quite different from the situation presented in the Cullen Case, supra.

There remains the question of the right to limit liability. The managing officers of the Shamrock Company had knowledge or notice that the Gantly had not been recaulked below the light water line for fifteen years. It was the defective condition of that part that caused the trouble. Such knowledge or notice on the part of managing officers of a corporate owner is deemed that of the owner under the limitation act and will operate to deprive it of the right to limit liability. Spencer Kellogg & Sons v. Hicks, 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903.

In the limitation suit there will be a decree denying limitation of liability, adjudging the petitioner liable without limit, sending the case to a commissioner for proof of

damages, and continuing the stay against other proceedings. In the suit brought by Conners Marine Company, Inc., there will be a stay. In the suit brought by Ambrose Lighterage & Transportation Company, the libel will be dismissed as to Conners Marine Company, Inc.; there will be a stay as to the Shamrock Company. The suit by the Shamrock Company against Luckenbach Trap Rock Corporation will be dismissed.