### THE MOTOR LAUNCH NO. 12.

### NO. 12.

District Court, E. D. Pennsylvania.

April 5, 1946.

Shields, Clark, Brown & McCown, of Philadelphia, Pa., and Burlingham, Veeder, Clark & Hupper, of New York City, for libellant.

Howard M. Long, of Philadelphia, Pa., for respondent.

BARD, District Judge.

This is a libel in rem brought by Lake Tankers Corporation, owner of tank barge L.T.C. No. 6, to recover for damages sustained by the L.T.C. No. 6 in an alleged collision with Tug Motor Launch No. 12 and tow on April 5, 1942 off Sandy Point, Maryland. I make the following:

Findings of Fact.

1. Libellant Lake Tankers Corporation is a corporation incorporated under the laws of the State of Delaware. At all times pertinent hereto, libellant was the owner of tank barge L.T.C. No. 6.

2. Tug Motor Launch No. 12 has been released from the jurisdiction of this court under a stipulation for value and bond in the amount of $3,500.

3. Claimant J.A.G. Transportation Company is a corporation incorporated under the laws of the State of Delaware. At all times pertinent hereto, claimant was the sole owner of the Tug Motor Launch No. 12, her tackle, apparel, machinery, engines and furniture.

4. On the morning of April 5, 1942, the tanker M/V Atlantic Sun was anchored in Chesapeake Bay off Sandy Point, Md. The tanker was discharging her cargo of oil to several tank barges moored alongside.

5. Tank barge L.T.C. No. 6 was properly moored on the starboard side of the Atlantic Sun and tank barge Sinclair No. 2 was moored on the port side of the Atlantic Sun.

6. L.T.C. No. 6 and Sinclair No. 2 had both completed loading and were awaiting a tow to Marcus Hook, Pa.

7. About 7:50 a. m., Motor Launch No. 12 came alongside Sinclair No. 2 and made

fast the port side of the Sinclair No. 2 to the starboard side of the tug.

8. Motor Launch No. 12, with the Sinclair No. 2 in tow on her starboard side, then backed around the stern of the Atlantic Sun and came forward to take the L.T.C. No. 6 in tow on the tug's port side.

9. While going forward to complete this maneuver, Motor Launch No. 12 collided with the L.T.C. No. 6, striking the barge on the starboard side forward.

10. When the collision was imminent, the captain of L.T.C. No. 6 called to the master of the tug to reverse the tug's engine.

11. The captain of L.T.C. No. 6 placed fenders between the barge and the tug to minimize the effect of the impending collision, but they were broken by the force of the impact.

12. After the collision, Motor Launch No. 12 proceeded to Marcus Hook, Pa., with L.T.C. No. 6 and Sinclair No. 2 in tow.

13. At the time of the collision the weather was clear, there was no wind, and the tide was at flood.

### Discussion.

The pleadings raise a simple question of fact, namely, whether or not Motor Launch No. 12 collided with L.T.C. No. 6 on April 5, 1942. Claimant-respondent categorically denies that its vessel collided with the tank barge, and further denies that it towed the barge on that day.

In support of its allegations, libellant offered the testimony of the Master of the L.T.C. No. 6 and the Master of Sinclair No. 2. They testified that Motor Launch No. 12, with the Sinclair No. 2 made fast to her starboard side, backed around the stern of the Atlantic Sun and came forward to take the L.T.C. No. 6 in tow on her port side. In making this last maneuver Motor Launch No. 12, in some manner, collided with the L.T.C. No. 6 on the starboard side forward.

Claimant offered the testimony of the master and engineer of the tug. Both denied that they took L.T.C. No. 6 in tow on April 5, 1942, and that any collision occurred between the vessels.

Upon careful examination of the depositions and the testimony taken in open court, I find that Motor Launch No. 12 did collide with L.T.C. No. 6 on April 5, 1942. In doing so, I lean heavily on the testimony of the only disinterested witness, the master

of Sinclair No. 2, and on the presence of certain inconsistencies in the testimony of claimant's witnesses.

Claimant does not question the fact that L.T.C. No. 6 was properly moored. The barge had an adequate lookout who saw the impending collision and attempted to warn the master of Motor Launch No. 12. The barge had no motive power and could do nothing to avoid the collision. The weather was calm and clear.

Under these circumstances, it was not incumbent upon libellant to prove any specific act of negligence on the part of the tug. Where a vessel with motive power and with adequate room to navigate collides with a moored vessel, the mere fact that a collision occurred raises a presumption of negligence on her part. The Granite State, 3 Wall. 310, 18 L.Ed. 179; The John C. Fisher, 3 Cir., 50 F. 703; United States v. King Coal Co., 9 Cir., 5 F.2d 780; The Clarence P. Howland, 2 Cir., 16 F.2d 25; Guthrie v. City of Philadelphia, D.C.E.D.Pa., 73 F. 688; The Chickie, D.C.W.D.Pa., 54 F. Supp. 17, and 141 F.2d 80. Further, claimant failed to produce the logbook of Motor Launch No. 12 upon demand. Although suit was brought some time after the collision, claimant received adequate notice of the collision a few weeks thereafter. Claimant's failure to offer adequate explanation for its inability to produce the logbook raises an inference that the tug was at fault in the collision. United States v. Delaware Bay and River Pilots' Ass'n, 3 Cir., 44 F.2d 1.

Claimant offered no evidence to rebut the presumption of fault by proof that the collision could not have been averted by the exercise of reasonable nautical skill. The Granite State, supra. This being so, I must hold that the collision was the fault of Motor Launch No. 12. Since the L.T.C. No. 6 was properly moored and was without motive power, it was not the cause, in any degree, of the collision.

A decree in accordance with the foregoing opinion may be submitted.

### Conclusions of Law.

1. Motor Launch No. 12 was solely at fault for the collision between Motor Launch No. 12 and L.T.C. No. 6.

2. L.T.C. No. 6 was not at fault.

3. The libel should be sustained in favor of Lake Tankers Corporation, libellant.