**Hendrik VAN NOOD**

v.

**FEDERAL BARGE LINES, INC.,** Midland Enterprises, Inc. and **BARGE OR-728.**

**No. 8183.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 29, 1968.

Robert B. Deane, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., for plaintiff.

Charles Kohlmeyer, Jr., John William Futrell, Lemle & Kelleher, New Orleans, La., for defendant.

Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for third-party defendant.

MITCHELL, District Judge.

This is an action in admiralty by Hendrik Van Nood to recover damages sustained by the Motor Vessel *Clara* on May 4, 1965 when she was struck by a drifting barge (Barge *OR–728*). This action is brought against the present owner of the barge, Midland Enterprises, Inc. and her charterer, Federal Barge Lines, Inc. The defendants impleaded National Shipping Corporation, lessee of the barge.

Trial was held on January 15, 1968. After considering the pleadings, evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I

Plaintiff, Hendrik Van Nood, is, and at all times material hereto, was the owner, operator and master of the Dutch Motor Vessel *Clara*, a small coastal trader 224 feet in length with a 31 foot beam. On the night of May 4, 1965, she was moored in the Mississippi River at the Congress Street Wharf, New Orleans, with her starboard side to the wharf and her bow upstream.

### II

On May 4, 1965, Barge *OR–728* was owned by the Ohio River Company. Defendant Federal Barge Lines, Inc. was the bareboat charterer and owner pro hac vice of the barge.

### III

Defendant Midland Enterprises, Inc. is the present owner of Barge *OR–728*, having acquired her on November 2, 1965,[1] and was her owner at the time this libel was filed (May 3, 1966).

### IV

At all times pertinent hereto, National Shipping Corporation, third party defendant, was the owner and operator of the Pakistani Steamship *Karanphuli*, which, on May 4, 1965, was moored at the Congress Street Wharf, New Orleans, her starboard side to the wharf and her bow upstream. The M/V *Clara* was moored some 20 to 30 feet astern of the *Karanphuli*.

### V

When anyone ordered a barge from Federal, usual procedure was for Federal to have Joe Domino send a tug to its fleet landing and have the barge towed to the designated location. Once a barge was taken from its fleet landing Federal had no knowledge of how the barge was delivered or moored and its only concern was to receive barge rental and return of the barge at some later date.[2]

### VI

At the request of the *Karanphuli* or her charterers, Federal arranged to have the unmanned inland steel cargo Barge *OR–728* taken from its fleet at the foot of Carrollton Avenue and delivered to the *Karanphuli* to be used in discharging the latter. The barge was delivered by the Tug *G. F. McCall* and according to the log of the *Karanphuli* for May 4, 1965, Barge *OR–728* was delivered alongside her No. 4 hatch at 10:30 AM that day.

### VII

Shortly after 8:00 PM on the evening of May 4, 1965, the outboard (port) side of the M/V *Clara* was damaged as a result of a collision with Barge *OR–728* which had, in some unexplained manner, drifted free from her moorings alongside the *Karanphuli*.

The chief officer of the *Clara* made the barge fast alongside that vessel and inspected the damage. Thereafter an unknown tug took possession of Barge *OR–728* and moved her back up alongside the *Karanphuli*. Captain Hendrik Van Nood, master of the *Clara*, was not aboard the *Clara* at the time of the collision. However, he arrived shortly thereafter, observed the barge alongside the *Clara*, saw the tug take her back to the *Karanphuli*, and observed damage to

---

1. Defendant's answers to interrogatories, Answer 1.

2. Testimony of Walter Kaufman.

the port side of the *Clara's* hull resulting from the collision.

## VIII

The *Clara* departed New Orleans the following day and upon her return on May 20, 1965, a staff surveyor of the Salvage Association, London, examined her damaged hull, after which Captain Van Nood obtained bids from two ship repair yards for repairing the damage. Gulf-Tampa Drydock Company submitted the low bid ($3,827). London Salvage Surveyor Derrick Wilkinson testified that the low bid was fair and reasonable and that additional expenses of $319, incurred and estimated for surveys and supervision, were fair and reasonable. The damage had not been repaired as of the date of trial.

## CONCLUSIONS OF LAW

### I

This Court has jurisdiction over this cause pursuant to the provisions of 28 U.S.C. § 1333(1) and venue in the Eastern District of Louisiana is proper.

### II

■ A vessel properly moored to a pier or to the shore, like a vessel properly anchored, has the highest degree of privilege and when a drifting (or moving) barge (or vessel) strikes such moored vessel (or a fixed object) there is a presumption that the collision occurred through the negligence of the drifting (or moving) vessel and the burden is on the latter to exonerate herself from fault.[3] Absent contradictory evidence the presumption of negligence stands.[4]

### III

■ If the cause of the barge's going adrift is unknown, she is liable for any damage which she may have caused.[5]

### IV

■ At the time of the collision Barge *OR-728* was owned by the Ohio River Company, which is not a party to this suit. Defendant Midland Enterprises, Inc., purchased the Barge *OR-728* on November 2, 1965, some five months after the collision in question. At the time of the collision no relationship existed between Midland and Barge *OR-728*, therefore no personal liability may be imposed upon Midland for the barge's actions. Accordingly, dismissal of the action against Midland Enterprises, Inc. is warranted.

### V

■ Federal Barge Lines, as bareboat charterer of Barge *OR-728*, was her owner pro hac vice, responsible for her, capable of permitting or causing liens to be created against her, and liable to third parties to the same extent that her owner would be.[6]

---

3. The Granite State, 3 Wall (70 U.S.) 310, 18 L.Ed. 179 (1866); The Louisiana, 3 Wall (70 U.S.) 164, 18 L.Ed. 85 (1865); Diamond Coal & Coke Co. v. Hazlewood Co., 297 F. 242 (CA 3–1924); Sewerage & Water Board of New Orleans v. Joe L. Hill, 118 F.Supp. 951 (ED La.–1954); aff'd 218 F.2d 771 (CA 5–1955); Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (CA 5–1967).

4. Neither of the defendants or the third-party defendant produced an eye-witness to the actual delivery of Barge *OR-728* to *Karanphuli*. The deck log of the *Karanphuli* for May 4, 1965, states, "10:30 Barge *OR-728* came alongside No. 4 to receive cargo." However, there is no evidence as to the manner in which the barge was delivered or to whom she was delivered. The master of the *Karanphuli* has no recollection of the details (deposition Alvi, Page 10).

5. In Re Eastern Dredging Co., 162 F. 860 (CA 1–1908); Griffin on Collision (1962) p. 383.

6. Leary v. United States, 81 U.S. (14 Wall) 607, 610, 20 L.Ed. 756 (1872) 756; Reed v. United States, 78 U.S. (11 Wall) 591, 601, 20 L.Ed. 220 (1871); Cannella v. United States, 179 F.2d 491, (CA 2–1950); Gilmore and Black, The Law of Admiralty, (1957) Page 218. The U. S. 219, 21 F.Supp. 463, 465 (D.C. Pa.); Aird v. Weyerhaeuser Steamship Co., 169 F.2d 606, 610 (CA 3); The Barnstable, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954 (1901).

## VI

When the *OR–728* was delivered to *Karanphuli*, Federal relinquished the care, custody and control of the barge to the master and officers of the *Karanphuli* and, through them, National Shipping Corporation, third-party defendant and owner of the *Karanphuli*, is liable for all damage occasioned as a result of the barge coming adrift while in third-party defendant's custody.[7]

## VII

It is incumbent upon those charged with the duty of keeping a vessel under control to show that she did not come into damaging contact with a moored vessel through their negligence.[8]

## VIII

Pursuant to Admiralty Rule 56 which was in effect at the time this libel was filed, and pursuant to Rule 14(c) of the Federal Rules of Civil Procedure currently in effect and applicable to Admiralty causes of action, a defendant may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, and if the third-party plaintiff demands judgment against the third-party defendant in favor of plaintiff, "the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." In the instant cause of action the third-party complaint against the *Karanphuli* prayed that all persons having or claiming any interest in her appear and answer under oath the third-party petition and the original libel. Regardless of whether Admiralty Rule 56 or Federal Rules of Civil Procedure 14(c) applies, I find that there is sufficient compliance with Rule 14(c) to support

a judgment in favor of plaintiff directly against third-party defendant. "These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits."[9]

Accordingly, let judgment in amount of $4,146 together with interest as of May 4, 1965, and all costs be entered in favor of Hendrik Van Nood and against third-party defendant National Shipping Corporation, according to the above findings of fact and conclusions of law.

7. Wessel, Duval & Co. v. Charleston Lighterage & Transfer Co., 25 F.2d 126 (4 Cir. 1928); United States v. The Barge N.Y.C. Brandon, 1946 AMC 1306 (SD NY–1946); Sherwood Refining Co. v. Whiteman, 127 F.Supp. 478 (ED La.–1955); John I. Hay Co. v. The Allen B. Wood, 121 F.Supp. 704 (ED La.–1954), aff'd sub nom. Martin Oil Service, Inc. v. John I. Hay Co., 219 F.2d 237 (CA 5–1955 per curiam).

8. The Buffalo, 56 F.2d 738 (CA 2–1932); The Chickie, 54 F.Supp. 17 (WD Pa.–1942).

9. Surowitz v. Hilton Hotels Corporation, 383 U.S. 363, 86 S.Ct. 845, 851, 15 L.Ed. 2d 807 (1966).